995 A.2d 906 (2010)
DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, of the Commonwealth of Pennsylvania, Petitioner
v.
OFFICE OF OPEN RECORDS, Respondent.
Office of the Budget, Petitioner
v.
Office of Open Records, Respondent.
Department of General Services, Petitioner
v.
Office of Open Records, Respondent.
No. 1165 C.D. 2009, No. 1209 C.D. 2009, No. 1557 C. D. 2009.
Commonwealth Court of Pennsylvania.
Argued February 10, 2010.
Decided May 24, 2010.
*908 Michael F. Eichert, Chief Counsel, Harrisburg, for designated petitioners.
Corinna V. Wilson, Chief Counsel, and Terry Mutchler, Harrisburg, for respondent, Office of Open Records.
Louis Agre, Ft. Washington, for intervenors, Louis Agre and International Union of Operating Engineers, Local 542.
BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.
OPINION BY Judge BROBSON.

I. INTRODUCTION

In these consolidated appeals,[1] three Commonwealth agenciesthe Office of the Budget (Budget), the Department of Conservation and Natural Resources (DCNR), and the Department of General Services (DGS) (collectively, Agencies)seek our review of separate but related decisions by the Office of Open Records (Open Records) pursuant to our statutory jurisdiction under the Right-to-Know Law (RTKL).[2]
The records at issue are certified payroll records of third-party contractors who entered into contracts with the Commonwealth of Pennsylvania for public projects. The certified payroll records of these non-governmental employers contain information relating to each of the contractors' employees who worked on the particular public project, such as each employee's name, social security number, home address, hourly rate of pay, gross amount of wages earned, number of hours worked, amount deducted from gross pay for taxes and/or benefits, and net pay.[3] In response to RTKL requests for copies of these certified payroll records, the Agencies produced only redacted versions of the certified payrolls. The requesters challenged the Agencies' productions, and Open Records *909 appeals officers directed the Agencies to release un-redacted copies of the certified payroll records.
Having reviewed the record in these consolidated appeals as a whole, and based on the findings of fact and conclusions of law set forth below, we reverse the final determinations of the Open Records appeals officers.

II. FACTS AND PROCEDURAL POSTURE

A. DCNR v. Office of Open Records (Gribbin)
On April 17, 2009, Thomas M. Gribbin, Sr. (Gribbin) requested[4] the release of all certified payroll records submitted by contractor Marion Hill Associates, Inc. and all subcontractors that had been working on a construction project identified in Gribbin's request as "Marina Dock Rehabilitation." DCNR responded by letter dated April 24, 2009, enclosing redacted copies of the requested records. DCNR redacted the Social Security numbers and home addresses of the contractors' employees, taking the position that this information was exempt under the RTKL. The letter further informed Gribbin that he had a right to appeal the response to Open Records because of the redactions.
On April 27, 2009, Gribbin sent a letter to Open Records, identical to his original request for documents. By a second letter to Open Records dated April 28, 2009, Gribbin indicated that he wished to appeal DCNR's April 24th decision to produce only redacted copies of the certified payroll records.[5] Open Records sent a letter to Gribbin and DCNR on May 1, 2009, describing the process Open Records uses to evaluate appeals, including proceedings before appeals officers, who, according to the letter, may or may not conduct a hearing on the appeal.
Open Records assigned an appeals officer to decide Gribbin's appeal. Following various e-mail correspondence, DCNR submitted a brief in support of its denial of the requested information. In its cover letter accompanying the brief, DCNR asked the appeals officer to conduct a hearing to allow DCNR to present evidence of the potential personal harm that would result if Open Records required DCNR to release the information. The appeals officer denied the request by e-mail dated May 28, 2009.
In its brief to Open Records, DCNR argued that home addresses do not constitute records under the RTKL because they are (1) exempt under Section 708(b)(1)(ii) of the RTKL[6] (records the disclosure of which "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to the personal security of an individual") and Section 708(b)(6)(i)(A)[7] (personal identification information . . . "[a] record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number") and (2) they are exempt under the RTKL *910 because the RTKL exempts any information that is exempt under federal or state law, regulation, or judicial decree (under the theory that an individual has a constitutional right to privacy). Around the time DCNR submitted its brief, the contractor that was performing the subject construction sought to intervene.
The Open Records appeals officer issued a Final Determination on June 1, 2009, granting Gribbin's open records appeal and permitting him access to the home addresses of the contractor's employees whose wage information was included on the certified payroll records. The appeals officer referred to earlier decisions of Open Records that had specifically held that addresses were not the subject of any exemption in the RTKL under Section 708(b)(6) because that provision, which defines "personal identification information," specifically exempts only the home addresses of individuals such as law enforcement officers and judges. Also, with regard to Section 708(b)(1) of the RTKL, the appeals officer indicated that DCNR did not meet its burden of proof regarding the substantial/demonstrable risk of harm.[8]
DCNR and the intervenor third-party contractor appealed the Open Records appeals officer's Determination, raising the same issues noted above.

B. Budget v. Open Records (Malley/Leet/Sheet Metal Workers' Union)
On March 2, 2009, Shaun Leet, a representative of Sheet Metal Workers' Local 12 (Leet or Union, as appropriate), sent a RTKL request to the open records officer of Budget, requesting copies of the certified payroll of a roofing contractorBurns & Scalo Roofingthat had performed services on a construction project for the Fred Rogers Center and Business Conference Center. The request also sought the same information for any roofing subcontractors. Budget's open records officer responded to Leet's request by letter dated March 12, 2009, indicating that Budget would use the RTKL's extension provision, whereby an agency may take longer than the usual statutory period to provide copies when redaction is necessary. By letter dated April 13, 2009, Budget's open records officer produced a compact disc (CD-Rom) with two .pdf files consisting of 180 pages of information responsive to Leet's request. Budget, however, redacted from its production the following information: (1) Social Security numbers, (2) signatures, (3) names, (4) addresses, and (5) W-4 tax exemption information.
By letter dated April 24, 2009, Kevin Malley (Malley) and Leet, on behalf of the Union, filed an appeal with Open Records, challenging the redaction by Budget of the contractors' employees' names. Open Records sent a letter to Budget, Malley, and Leet on April 27, 2009, describing the appeal process. Appeals officer Audrey Buglione sent Budget a letter dated April 29, 2009, alerting it to the fact that Open Records had issued earlier determinations in unrelated cases which held that names are not exempt information and directing him, among other things, to inform Open Records of the legal and factual basis for redacting the names.
Budget submitted to the appeals officer a memorandum of law with affidavits. Budget's first argument was that its redaction of names was appropriate. Budget apparently presumed that the Union was interested in knowing whether the contractor *911 was paying prevailing wage[9] to the employees. Budget apparently reasoned that, by supplying the specific wage information about unidentified employees, the Union could determine whether the contractor was in compliance with the PWA. Budget further reasoned that if it included the names, then it would be releasing "personal financial information," which is exempted under the RTKL. The rationale apparently was that the information is not personal financial information unless a name is attached to it.
Budget also argued that the release of names and addresses violated an individual's right to privacy, and that this right, when balanced against the public interest recognized in the RTKL, weighed in favor of the individuals' right to privacy.
In her May 26, 2009 Final Determination, the Open Records appeals officer, relying upon several prior Open Records decisions, rejected Budget's arguments, particularly the argument that there is a right to privacy that outweighs the public's interest under the RTKL. Open Records, however, did not directly address the idea that, under the personal identification information exception, Section 708(b)(6)(i)(A) of the RTKL, which includes "personal financial information," the certified payroll documents are exempti.e., are not "public records." The appeals officer granted the appeal and directed Budget to produce the certified payroll records without the names redacted.

C. DGS v. Open Records (Agre)
Louis Agre (Agre), an attorney apparently representing the International Union of Operating Engineers, Local 542, sent a request under the RTKL via e-mail to DGS on April 2, 2009. Agre was seeking certified payroll information regarding a company called Out of Site Infrastructure, which apparently performed demolition, excavation, and other work at a construction site at Cheyney University.
DGS's open records officer responded with copies of certified payroll with names, addresses, Social Security numbers, and telephone numbers redacted. He also noted the right to appeal the adequacy of DGS's response to Open Records. In its letter enclosing the redacted documents, DGS's open records officer reasoned that the redactions were appropriate because the information was protected from disclosure under the RTKL's personal financial information exemption (citing Section 708(b)(6)), under the RTKL's investigation exemption (citing Section 706(b)(17)), and under the right to privacy guaranteed by Article I, Sections 1 and 8 of the Pennsylvania Constitution.
Agre filed an appeal, which Open Records received on May 7, 2009, challenging DGS's redaction of names and addresses. Open Records responded, as it did in the other cases, with a letter acknowledging the appeal and indicating that an appeals officer may conduct a hearing. Open Records assigned Nathaniel J. Byerly, Esquire, as appeals officer for the appeal, and he requested that DGS provide support for its position that the redactions were appropriate. On May 27, 2009, Open Records received DGS's "Response." In this forty-eight page document, DGS commented that it strongly believed that Open Records' current legal analysis regarding the constitutional right to privacy was "deeply flawed." Specifically, DGS asserted that (1) the redaction was appropriate in order *912 to avoid the release of personal financial information; (2) the certified payrolls constitute investigatory documents because they are collected as part of an official inquiry into whether contractors are complying with the Prevailing Wage Act, and, consequently, they are exempt as noncriminal investigative records under Section 708(b)(17) of the RTKL; and (3) release of the names and addresses would violate a constitutional right to privacy. This response also included numerous documents, such as letters and affidavits from persons involved with such matters as law enforcement and technology, indicating problems that could arise through the disclosure of names and addresses.[10]
The Open Records appeals officer issued his Final Determination on August 5, 2009, granting Agre's appeal and directing DGS to release the names and addresses that had been redacted from the certified payroll records. In general, the appeals officer indicated that he was relying upon Open Records' earlier decisions, rejecting statutory exemption and constitutional right to privacy arguments. Specifically, the appeals officer first addressed the personal financial information exemption argument. DGS had relied on a Pennsylvania Supreme Court decision, Sapp Roofing Company, Inc. v. Sheet Metal Workers' International Association, 552 Pa. 105, 713 A.2d 627 (1998) (plurality). In Sapp Roofing, our Supreme Court referred to a decision by the United States Court of Appeals for the Second Circuit, arising under the Federal Freedom of Information Act[11] (FOIA), which recognized the significant interest private employees have in avoiding the disclosure of their names and addresses when associated with financial information. The appeals officer, however, rejected DGS's argument, noting that Sapp Roofing was only a plurality opinion that did not expressly adopt the federal court's reasoning. Further, the appeals officer concluded that the term "personal financial information" could not be interpreted to include names and addresses.
The appeals officer also rejected DGS's argument that the certified payroll records involved noncriminal investigative information. The appeals officer noted that DGS offered no factual support detailing what is involved under the PWA to support the contention that the contractor submits the payroll documents as part of an investigation such as would render the documents noncriminal investigative records; however, the appeals officer never provided an opportunity for a hearing.
With regard to the issue of whether a constitutional right to privacy precludes release of names and addresses associated with the payroll records, the appeals officer concluded that no case law supported DGS's argument of such a right. Finally, the appeals officer rejected DGS's argument that Open Records should engage in a balancing test similar to one employed by federal entities under the FOIA, because FOIA has a specific provision requiring such balancing, whereas the RTKL contains no similar provision.

III. ISSUES FOR REVIEW/STANDARD OF REVIEW

The Agencies raise the following issues in their joint brief: (1) whether individuals have a constitutionally protected privacy interest in their names and addresses such that Open Records must balance that interest against the public interest in such information before Open Records *913 may disclose such information; (2) whether the asserted privacy interest outweighs the public interest, where, as the Agencies contend here, the parties seeking the information have not asserted such public interest; and (3) whether the Agencies properly redacted the names and addresses from the disclosed certified payroll records under the personal security exemption and/or the personal financial information exemption in the RTKL, such that the otherwise relevant financial information they provided to the requesting parties satisfied the requirements of the RTKL.
This Court's review of final determinations by Open Records is governed by Section 1301(a) of the RTKL, which provides in pertinent part as follows:
Within 30 days of the mailing date of the final determination ... a requester or the agency may file a petition for review or other document as might be required by rule of court with the Commonwealth Court. The decision of the court shall contain findings of fact and conclusions of law based upon the evidence as a whole. The decision shall clearly and concisely explain the rationale for the decision.
65 P.S. § 67.1301(a). In this Court's recent en banc decision in Bowling v. Office of Open Records, 990 A.2d 813, 818 (Pa. Cmwlth.2010), we held that our standard of review of Open Records orders is as follows. "[A] reviewing court, in its appellate jurisdiction, independently reviews [Open Records'] orders and may substitute its own findings of fact for that of the agency." The Court opined that it could apply the broadest scope of review and look to information beyond the contents of the record to be reviewed as described in the RTKLi.e., the request, the response, the requester's exceptions to the response, hearing transcript (if any), and the final determination. In other words, the Court can accept additional evidence and make its own factual findings.

IV. DISCUSSION

In this appeal, the Agencies and Open Records have largely focused on the question of whether a constitutional right to privacy protects from release the names and/or addresses of individuals identified on the certified payroll records. This Court, however, is guided by the notion that, whenever possible, a court should refrain from deciding constitutional issues when it can resolve a dispute on a statutory basis. Pottstown Sch. Dist. v. Hill School, 786 A.2d 312 (Pa.Cmwlth.2001). Because we believe this appeal can be disposed of on statutory grounds, we will not address the parties' constitutional arguments.

A. The Certified Payroll Records Are "Records"
The parties do not dispute that the certified payroll records meet the definition of a "record" under the RTKL. The definition of "record" in the RTKL is broad enough to encompass a hard or electronically-stored document in an agency's possession, as well as information stored or maintained by an agency but that is not necessarily part of a specific document.[12] *914 Here, we are dealing with "records" that are documentscertified payroll records submitted to the Agencies by third-party contractors. In each case, Budget, DGS, and DCNR produced the records in response to RTKL requests, but redacted certain identifying information about the contractors' employees. At issue in these appeals is the propriety of the Agencies' decision to redact the names and/or addresses of the contractors' employees in the copies of the certified payroll records provided to the requesters.

B. The Certified Payroll Records Include "Personal Financial Information"
The Agencies, collectively, have identified three statutory exemptions to support their decision to redact the certified payroll records in this case: (1) the personal security exemptionSection 708(b)(1)(ii) of the RTKL; (2) the personal financial information exemptionSection 708(b)(6)(i)(A) of the RTKL; and (3) the investigation exemptionSection 708(b)(17) of the RTKL. For the reasons that follow, we find that the certified payroll records include information that falls within the personal financial information exemption.[13]
In context, the personal financial information exemption is a component part of a three-part broader exemption for "personal identification information." Section 708 of the RTKL provides, in relevant part:
(b) Exceptions.Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
. . . .
(6)(i) The following personal identification information:
(A) A record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number.
(B) A spouse's name, marital status or beneficiary or dependent information.
(C) The home address of a law enforcement officer or judge.
(ii) Nothing in this paragraph shall preclude the release of the name, position, salary, actual compensation or other payments or expenses, employment contract, employment-related contract or agreement and length of service of a public official or an agency employee.

Id. § 67.708(b)(6) (emphasis added). As written by the General Assembly, the "personal identification information" exemption is actually three separate exemptions set forth in clauses (A), (B), and (C) of Section 708(b)(6)(i) of the RTKL. The "personal financial information" exemption is found in clause (A).
The RTKL defines "personal financial information" to include:
An individual's personal credit, charge or debit card information; bank account information; bank, credit or financial statements; account or PIN numbers and other information relating to an individual's personal finances.

Id. § 67.102 (emphasis added). Though certified payroll records do not fall within one of the specific categories of documents listed in this definition, we must determine whether they constitute "other information *915 relating to an individual's personal finances."
With no further guidance from the statutory definitions in the RTKL, we are guided by rules of statutory construction, which instruct us to construe words according to their common usage. See 1 Pa.C.S. § 1903(a). The word "finance" and its variant "finances" have broad meanings. "Finance" has been defined as "money resources, income, etc." Webster's New World Dictionary and Thesaurus 240 (2nd ed.2002). "Finances" has been defined as "the pecuniary affairs or resources of a state, company, or individual." Webster's Third New Int'l Dictionary (Unabridged) 851 (1993) (emphasis added). Though we could include additional dictionary support, these two alone clearly support a conclusion that an individual's wages and wage-related information, such as that included in the certified payroll records at issue in these consolidated appeals, represent "money resources, income" and go to "the pecuniary affairs" of an individual. Because this information relates to an individual's personal finances, the information contained in the certified payroll records falls within the statutory definition of "personal financial information."[14]
We find further support for this conclusion in subparagraph (ii) of Section 708(b)(6), wherein the General Assembly specifically carved out an exception to exemption in subparagraph (i):

Nothing in this paragraph [6] shall preclude the release of the name, position, salary, actual compensation or other payments or expenses, employment contract, employment-related contract or agreement and length of service of a public official or agency employee.

Id. § 67.708(b)(6)(ii) (emphasis added). Because of the exemption for documents containing personal financial information in clause (A) of subparagraph 6, the General Assembly apparently felt that this exception was necessary to ensure that wage and salary information for public officials and agency employees was available to requesters under the RTKL. The language limiting this carve-out exception to only public officials and agency employees evidences the General Assembly's intent, or at the very least recognition, that the personal financial information exemption in Section 708(b)(6)(i)(A) of the RTKL exempts wage and wage-related information for individuals who are not public officials or agency employees. To conclude otherwise would essentially render the carve-out exception for public officials and agency employees unnecessary and mere surplusagea construction we must avoid. See 1 Pa.C.S. §§ 1922(2) (presumption that "the General Assembly intends the entire statute to be effective and certain"); 1932(b) ("Statutes in pari materia shall be construed together, if possible, as one statute."); Concerned Citizens for Better Schs. v. Brownsville Area Sch. Dist., 660 A.2d 668, 671 (Pa.Cmwlth.1995) ("[W]henever possible, the courts must interpret statutes to give meaning to all of their words and phrases so that none are rendered mere surplusage.").

*916 C. The Personal Financial Information Exemption Does Not Apply

Section 708(b)(6)(i)(A) of the RTKL, as quoted above, exempts "personal identification information," which includes "[a] record containing . . . personal financial information." 65 P.S. § 67.708(b)(6)(i)(A) (emphasis added). Thus, any record that contains "personal financial information" is exempt from access by a requester under the RTKL.[15]See id.; see also id. §§ 67.102 (defining "public records" to exclude records that are exempt under Section 708), .301 (requiring agencies to provide access to "public records").
If this were the end of the analysis, we would be compelled to conclude that the certified payroll records at issue in this case are exempt from disclosure in their entirety.[16] But in applying any of the exemptions set forth in Section 708(b), we must consider subsection (c), which provides:
Financial records.The exceptions set forth in subsection (b) shall not apply to financial records, except that an agency may redact that portion of a financial record protected under subsection (b)(1), (2), (3), (4), (5), (6), (16) or (17). An agency shall not disclose the identity of an individual performing an undercover or covert law enforcement activity.
Id. § 67.708(c). Pursuant to this provision of the RTKL, if a public record is a "financial record," many of the exemptions in subsection (b) do not apply. The RTKL defines a "financial record" as any of the following:
(1) Any account, voucher or contract dealing with:
(i) the receipt or disbursement of funds by an agency; or
(ii) an agency's acquisition, use or disposal of services, supplies, materials, equipment or property.
(2) The salary or other payments or expenses paid to an officer or employee of an agency, including the name and title of the officer or employee.
(3) A financial audit report. The term does not include work papers underlying an audit.
Id. § 67.102.
Due to precedent from the Pennsylvania Supreme Court, we are constrained to conclude that the certified payroll records in this case are "financial records" under the *917 RTKL. In Sapp Roofing, a private contractor sought to enjoin a labor union from the right to access a contractor's payroll records in the possession of a school district. The trial court denied the injunction, and, in an unreported decision, a three-judge panel of this Court affirmed. On appeal, a divided Supreme Court took up the question of whether the contractor's payroll records were open for inspection under the old Right-to-Know Law ("Old Law").[17] The payroll records at issue in Sapp Roofing included information similar to the certified payroll records at issue herei.e., employee names and addresses, social security numbers, job positions, rates of pay, etc.
Justice (now Chief Justice) Castille, writing the lead opinion, found that the payroll records fell within the definition of "public records" under the Old Law. He relied on the following language in the definition: "`Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property. . . .'" Sapp Roofing, 552 Pa. at 108, 713 A.2d at 628 (quoting Section 1 of the Old Law). Justice Castille reasoned: "[T]he payroll records are public records because they are records evidencing a disbursement by the school district." Id., 552 Pa. at 109, 713 A.2d at 629 (emphasis added).
Sapp Roofing gained precedential force months later when our Supreme Court further examined the account/vouchers/contracts category of the definition of "public records" under the Old Law and cited Sapp Roofing with favor:
The first of these categories deals generally with fiscal aspects of governance, providing for public review of accounts, vouchers or contracts "dealing with" receipts of and disbursements by an agency. This Court's decision in [Sapp Roofing] concerned the accounts/vouchers/contracts category of public records. . . .
. . . Implicit in the Court's decision in Sapp Roofing is the conclusion that the accounts/vouchers/contracts category of public records reaches some range of records beyond those which on their face constitute actual accounts, vouchers or contracts. Nevertheless, it is clear from Sapp Roofing that, to constitute a public record, the material at issue must bear a sufficient connection to fiscally related accounts, vouchers or contracts.
North Hills News Record v. McCandless, 555 Pa. 51, 55, 722 A.2d 1037, 1038-39 (1999); see also LaValle v. Office of Gen. Counsel, 737 A.2d 330, 332 n. 5 (Pa. Cmwlth.1999) ("Although the decision in Sapp Roofing was a plurality decision, we note that the full Supreme Court in North Hills cited favorably to the reasoning employed in Sapp."), aff'd, 564 Pa. 482, 769 A.2d 449 (2001). In LaValle, the Supreme Court summarized the impact of Sapp Roofing and McCandless:
These decisions establish that the Act reaches some class of materials that are not facially accounts, vouchers, contracts, minutes, orders or decisions. The general constraint upon this expanded class that became relevant in McCandless was that the party seeking to inspect government records must establish some close connection between one of the statutory categories and the materials sought.
LaValle v. Office of Gen. Counsel, 564 Pa. 482, 493, 769 A.2d 449, 456 (2001).
These decisions from our Supreme Court and this Court examining the account/voucher/contract *918 portion of the definition of "public record" under the Old Law are relevant because in crafting the new RTKL, the General Assembly essentially lifted this component of the old definition of "public record" and used it to define a new term"financial record"in the RTKL. The language in the two definitions is virtually identical.[18] Faced with a prior judicial interpretation in Sapp Roofing[19] by a majority of the Justices on the Pennsylvania Supreme Court of the account/voucher/contract language in the RTKL, even though issued in the context of the Old Law, we are not at liberty here to ascribe a different meaning to the same language. See Nunez v. Redevelopment Auth. of Phila., 147 Pa.Cmwlth. 577, 609 A.2d 207, 209 (1992) ("[A]s an intermediate appellate court, we are bound by the opinions of the Supreme Court.")
Applying the Supreme Court's expansive reading of the account/voucher/contract language, the certified payroll records, in an indirect sense, are records that deal with or evidence the Commonwealth's dealings with these third-party contractors on public projects and the Commonwealth's disbursement of funds related to those public contracts. Unless and until the Supreme Court interprets the statutory language otherwise,[20] we are constrained to conclude that the certified payroll records fall within the account/voucher/contract class of documents that under the Old Law were "public records" and under the new law are now "financial records." The exemptions in Section 708(b) of the RTKL from disclosure thus do not apply to the certified payroll records in this case. 65 P.S. § 67.708(c).[21]

*919 D. The Agencies' Acted Within Their Discretion In Redacting the Certified Payroll Record

Though the exemptions in subsection (b) of Section 708 of the RTKL do not apply to financial records, such as the certified payroll records here, subsection (c) nonetheless provides that an agency "may redact that portion of a financial record protected under subsection (b)(1), (2), (3), (4), (5), (6), (16) or (17)." Id. Here, the Agencies produced redacted copies of the certified payroll records. Open Records held that the Agencies erred in redacting the names and/or home addresses of the third-party contractors' employees in those records. We find no error in the Agencies' decisions to exercise discretion afforded to them under the RTKL and to release the certified payroll records as redacted.
In its brief to the Open Records appeals officer, DCNR explained its reasons for redacting the home addresses as follows:
The certified payrolls that are the subject of the instant RTKL request contain the name of the employer and the name, address, job classification, hourly rate of pay, number of hours worked during the reporting period, wages and fringe benefits paid, and deductions made for each listed employee. These employees are not agency employees and there can be no question that this constitutes personal financial information. However, in order to provide information that may be useful to monitor compliance with the [PWA], portions of the information have been supplied, but not the home address. When coupled with the other information in the payroll records concerning their wages and employment, the home addresses of employees constitute "other information relating to an individual's personal finances" and should therefore be exempt from disclosure under section 708(b)(6)(i)(A).

(R.R. at 9a (emphasis added).) This reasoning is persuasive and can be applied with equal force to Budget's and DGS's decisions to redact the names and addresses of the third-party contractors' employeesnongovernmental employeesfrom the certified payroll records. The financial information contained in the certified payroll records is only personal to the individual employees so long as the identity of the employees is attached to the information. Redaction of the names and/or addresses renders what was personal financial information, impersonal. The Agencies thus acted reasonably and within the bounds of their discretion by producing the certified payroll records in redacted form to protect the personal nature of the financial information contained in those records.[22]

V. CONCLUSION

Based on undisputed facts of record and for the reasons set forth above,[23] we reach the following conclusions of law:

*920 1. The certified payroll records at issue in these consolidated appeals are public records under the RTKL.
2. Because the certified payroll records are also financial records under the RTKL, none of the exemptions from access in Section 708(b) of the RTKL apply to the certified payroll records.
3. The Agencies did not abuse their discretion under Section 708(c) of the RTKL in redacting from the certified payroll records the names and/or addresses of the contractor's employees to shield the personal nature of the financial information in the certified payroll records, which is protected under Section 708(b)(6)(i)(A).
We thus reverse the final determinations and orders of Open Records.
Judge COHN JUBELIRER concurs in the result only.

ORDER
AND NOW, this 24th day of May, 2010, the final determinations and orders of the Office of Open Records in the above captioned matters are REVERSED.
CONCURRING OPINION BY Judge McCULLOUGH.
I concur with the result reached by the Majority to reverse the Office of Open Records in this matter, but I diverge from the Majority's reliance upon the three justice plurality opinion in Sapp Roofing Co. v. Sheet Metal Workers' International Association, Local Union No. 12, 552 Pa. 105, 713 A.2d 627 (1998), that construed the repealed Right to Know Law, the Act of June 21, 1957, P.L. 390, as amended, 65 P.S. §§ 66.1-66.9 (the "1957 Law"). I am not persuaded that the plurality opinion in Sapp Roofing is binding precedent, or that it should guide our interpretation of the new Right to Know Law (RTKL).[1] Rather, I believe the proper basis to reverse Open Records is strictly a matter of construing the new RTKL in accordance with the intent and plain meaning of its provisions.
In Sapp Roofing, three justices concluded under the 1957 Law that payroll records of a contractor were "public" (and not, by the way, "financial records" as the Majority now holds) because they evidenced a disbursement of funds. Sapp Roofing is inapplicable to the cases before us, not only because it is a plurality opinion, but because it does not analyze the plain meaning of the terms "account, voucher and contract" under the new RTKL.
Sapp Roofing interpreted the definition of "public record" as defined by the 1957 Law, the four section predecessor to the new fifty-two section RTKL.[2] The specific issues before the Sapp Roofing Court were whether the payroll records constituted "public records," whether the release of payroll records would "impair the personal security of Sapp Roofing's employees," and whether that "potential impairment outweighs the public interest in the dissemination of the records." Sapp Roofing, 713 *921 A.2d at 629. A plurality of the justices concluded that the contractor's wage records were accessible.
In the instant case, I agree that the records at issue are "public records," and there is no personal security issue before the court. Instead, we have a statutory construction question unique to the new RTKL: whether payroll records of a contractor are financial records for purposes of sections 102 and 708 of the RTKL. While both section 102 of the RTKL and 65 P.S. § 66.1 of the 1957 Law contain the words "account, voucher or contract," section 102 expands that language beyond the 1957 Law, places the language into the context of financial records, and then incorporates the terms financial records and personal financial information into the exceptions set forth in section 708 of the RTKL. This is a new question, involving a new and more comprehensive statute.
Because the new RTKL is now before us, it is incumbent upon this Court to apply the basic rule of statutory interpretation: when the words of a statute are clear and free from all ambiguity, it should be interpreted solely from the plain meaning of its words; the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. Combine v. Workers' Compensation Appeal Board (National Fuel Gas Distribution Corp.), 954 A.2d 776 (Pa.Cmwlth.2008), appeal denied, 600 Pa. 765, 967 A.2d 961 (2009).
In relying so extensively upon Sapp Roofing, the Majority posits an extensive explanation as to why they are "constrained" to rely upon a plurality opinion that does not interpret the current RTKL, but rather a prior iteration of it. I respectfully disagree with this explanation. As Justice Eakin wrote for the Supreme Court in Pitt Ohio Express v. Workers' Compensation Appeal Board, 590 Pa. 99, 912 A.2d 206 (2006), reliance on a plurality opinion of the Supreme Court "is problematic," because "[w]hile the ultimate order of a plurality opinion ... is binding upon the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority." Id. at 103, 912 A.2d at 208. My concern is that the Majority is unnecessarily elevating the Sapp Roofing plurality opinion to the status of a majority opinion of the Supreme Court, and in so doing ignores the long settled rule that a plurality opinion has no precedential value. By following a plurality decision under the presumptive context of "stare decisis," the Majority violates that very doctrine by ignoring the settled law concerning plurality opinions as expressed in Pitt Ohio.[3]
Further, I am not convinced that Sapp Roofing has evolved into a precedential decision because of the majority's contention that various views of the justices in Sapp Roofing constitute a "strong majority" that weighs against classifying it as a mere plurality opinion. Only five justices heard the case. The lead opinion was written by Justice Castille and joined by Justice Flaherty and it, along with a concurring opinion by Justice Zappala (who wrote separately to note that nothing in *922 the language of either the Prevailing Wage Act, Act of August 15, 1961, P.L. 987, as amended, 43 P.S. §§ 165-1-165-17, or the regulations implementing that Act, 34 Pa. Code §§ 9.101-9.112, appears to require that a contractor submit its payroll records to the public body), and a noted concurrence by Justice Nigro, established the plurality.
In relying on the Sapp Roofing opinion, the Majority tries to divine the thoughts of Justice Nigro, who concurred in the result only and did not write a separate concurring opinion. It is not reasonable to presume the rationale for his decision, except to infer from Justice Nigro's concurring vote that he did not agree with the rationale of the plurality opinion.
Under the current RTKL, the term "financial record" is defined under section 102 as follows:
"Financial record." Any of the following:
(1) Any account, voucher or contract dealing with:
(i) the receipt or disbursement of funds by an agency; or
(ii) an agency's acquisition, use or disposal of services, supplies, materials, equipment or property.
(2) The salary or other payments or expenses paid to an officer or employee of an agency, including the name and title of the officer or employee.
(3) A financial audit report. The term does not include work papers underlying an audit.
65 P.S. § 67.102.
I believe it is clear that this definition of financial records does not include the subject third party payroll records, for two reasons. First, these payroll records are clearly not accounts, vouchers or contracts dealing with: (i) receipt or disbursement of agency funds; or (ii) an agency's acquisition, use or disposal of services, supplies, materials, equipment or property. Justice Cappy's dissenting views in Sapp Roofing regarding accounts, vouchers, and contracts may provide more insight into the current issue before the Court than the views of the other Justices on the panel. Justice Cappy explained:
There is nothing in [The Prevailing Wage Act at 43 P.S. § 165-10] which would indicate that the required certifications equate to an `account, voucher or contract' evidencing a disbursement of funds by the public agency or that the filing of such certifications propels a disbursement by the public agency for such amounts so as to render the payroll records `public' and thus, obtainable under the Right to Know Act. Indeed, it more clearly addresses monies owed by the contractor and/or subcontractor to their workers and not amounts owed by the public agency. These payroll records constitute neither a record of any business dealings or transactions between Appellant and the School District; accordingly, they are neither a `voucher' nor an `account.' And, they certainly do not evidence any `contract' between the School District and Appellant.

Id. at 114, 713 A.2d at 631 (emphasis added).
Second and most significantly, however, is that paragraph (2) of the definition of financial records refers to the "salary or other payments or expenses paid to an officer, or employee of an agency." If the General Assembly had intended "salary," "other payments" or "expenses" of an agency to be an "account, voucher or contract," it would have expanded the definition in provision (1) to include same. Instead, the General Assembly specifically added this as a second and separate iteration of a "financial record" that applies only to agency officers and employees. In *923 my view, it is simply strained analysis to conclude that the "salary," "other payments" or "expense" information of third party, non-agency officers and employees are accounts, vouchers or contracts when the General Assembly does not consider that to be the case for agency officers and employees.
To conclude, as the Majority does, that these payroll records are accounts, vouchers or contracts in light of paragraph (2) and include them into the definition of financial records, does, as the Majority notes in another context, render paragraph (2) "unnecessary and mere surplusage-a construction we must avoid." See 1 Pa. C.S. § 1922(2) (presumption that "the General Assembly intends the entire statute to be effective and certain"); 1 Pa.C.S. § 1932(6) ("Statutes in pari materia shall be construed together, if possible, as one statute."); Concerned Citizens for Better Schs. v. Brownsville Area Sch. Dist., 660 A.2d 668, 671 (Pa.Cmwlth.1995) ("[W]henever possible, the courts must interpret statutes to give meaning to all of their words and phrases so that none are rendered mere surplusage.").
However, while it is clear to me that these payroll records of a non-agency are not financial records, this does not mean these records are completely exempted from disclosure. It is noted that the various Commonwealth agencies are in actual possession of them. Therefore, pursuant to section 305(a) of the RTKL, these records are to be "presumed" to be "public records." Section 305(a)(i), however, limits this presumption by providing that it does not apply if the record is exempt under section 708 of the RTKL.
Section 708(b)(6)(i)(A) of the RTKL exempts from disclosure "personal financial information" which itself is defined under the RTKL section 102. Upon application of this definition it is clear that the agencies redacted "personal financial information" from the payroll records. The agencies were within their discretion to do so.
Section 506(c) of the RTKL, entitled "Agency Discretion," permits an agency to make "any otherwise exempt record accessible" if "the agency head determines that the public interest favoring access otherwise outweighs any individual agency or public interest that may favor restriction of access." Moreover, section 706 of the RTKL authorizes an agency to redact information from "public record" that is not "subject to access." By redacting this personal financial information from these construed "public" payroll records the agencies in this case properly balanced the right to public disclosure with the privacy rights embodied in the RTKL regarding personal financial information.[4]
*924 Even assuming for the sake of argument that the payroll records are financial records, section 708(c) of the RTKL grants agencies the discretion to redact portions of a financial record protected under various enumerated provisions of subsection 708(b) and to release the record so redacted.
Therefore, I would reverse the final determinations and orders of Open Records based upon the foregoing analysis, which interprets the RTKL consistent with its plain meaning and which includes recognition of the personal financial information exemption from disclosure. This analysis also recognizes, however, that the General Assembly did not place an airtight seal around records that contain exempted financial information. Recognizing an agency's discretionary authority to release redacted records frees agencies to operate independently, as intended by the RTKL, and relieves this Court of the role of constant arbiter of statutory definitions. Thus, the agencies involved in these appeals did not abuse their discretion by redacting the certified payroll records in order to shield personal financial information.
Judge COHN JUBELIRER joins in this concurring opinion.
DISSENTING OPINION BY Judge PELLEGRINI.
I join Judge Simpson's cogent dissent explaining why information in reports submitted to governmental agencies detailing the money received under terms and conditions prescribed by the Prevailing Wage Act and paid with government funds under government contracts is not "personal financial information" and exempt from access.
I write separately because, even if the majority's conclusion that money is "personal financial information" is correct, the majority erred by redacting the names and addresses of the contractor's employees rather than the exempt financial information from the reports that the prevailing wage contractor is required to submit to the contracting governmental agency. Section 708(c) of the Right-to-Know Law, 65 P.S. § 67.708(c), provides that an "agency may redact that portion of a financial record protected" under, among other subsections, Section 708(b)(6)(i)(A). Moreover, Section 706 of the Right-to-Know Law, 65 P.S. § 67.706, provides, in relevant part:
If an agency determines that a public record, legislative record or financial record contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access.
Nothing in the Right-to-Know Law makes inaccessible the names and home addresses of the employees of a business that contracts with a governmental agency. The majority found that under Section 708(b)(6)(i)(A), the information of money paid in accordance with the Prevailing Wage Law was inaccessible as protected financial information. Under the plain language of 65 P.S. § 67.706 and 65 P.S. § 67.708(c), the majority should have granted access to the names and addresses of the employees, but denied accessredactedwhat it believes to be exempt personal financial information.
Accordingly, I respectfully dissent.
Judge SIMPSON joins.
DISSENTING OPINION BY Judge SIMPSON.
I respectfully dissent from the thoughtful majority opinion authored by Judge *925 Brobson. Unlike the majority, I would hold that the certified payroll records of third-party contractors who entered into contracts with the Commonwealth of Pennsylvania for public projects are not exempt from access Essentially, I disagree the payroll records contain exempt personal identification information. Thus, I would affirm.
Section 708 of the Law sets forth in subsection (b) 30 types of records exempt from presumed access. 65 P.S. § 67.708(b). One of those exemptions is addressed in the majority opinion: personal identification information. The pertinent language of the Law regarding the exemption for personal identification information is as follows (with emphasis added):
(b) Exceptions.Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
. . . .
(6)(i) The following personal identification information:

(A) A record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal email addresses, employee number or other confidential personal identification number.

(B) A spouse's name, marital status or beneficiary or dependent information.
(C) The home address of a law enforcement officer or judge.
(ii) Nothing in this paragraph shall preclude the release of the name, position, salary, actual compensation or other payments or expenses, employment contract, employment-related contract or agreement and length of service of a public official or an agency employee.
(iii) An agency may redact the name or other identifying information relating to an individual performing an undercover or covert law enforcement activity from a record.
65 P.S. § 67.708(b)(6).
By the plain terms of the Law, personal financial information is a subset of personal identification information. Examples of personal identification information in subsection (A) have several traits in common: each is confidential, each is personal to an individual, and each is a number or an alphanumeric phrase which can be used to identify an individual.
The Law also contains a definition of "personal financial information." It is defined as
An individual's personal credit, charge or debit card information; bank account information; bank, credit or financial statements; account or PIN numbers and other information relating to an individual's personal finances.

Section 102 of the Law, 65 P.S. § 67.102. This definition must be read in conjunction with the exemption language quoted above. 1 Pa.C.S. § 1921(a) (every statute shall be construed, if possible, to give effect to all its provisions). Thus, this definition does not trump or replace the personal identification language in the exemption; rather, the definition supplements the exemption language.
Applying the plain language of the Law, I conclude that the payroll information is not exempt personal identification information. While it certainly relates to a person's finances, it is not used to identify an individual. Moreover, knowing a person's pay does not facilitate contacting the payee or accessing the wage.
The majority cannot fathom financial information more personal than an individual's *926 pay. With little effort, however, I can imagine much more confidential financial identification information, such as an individual's
1) safe deposit box number,
2) debit card or credit card PIN,
3) credit card security code or CIN,
4) financial account number,
5) financial account user ID,
6) financial account password,
7) financial account routing number, and
8) the answers to the additional identification questions that some financial accounts require.
This information identifies an individual to a financial institution and, more importantly, can lead to access of his or her financial resources. These types of personal financial information are covered by the personal identification information exemption.
At the very least, the personal identification information exemption is ambiguous because it is susceptible to more than one interpretation. Under these circumstances, we should turn to the rules of statutory construction. The object of all construction is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a).
Fortunately, our Supreme Court recently confirmed the intention of the General Assembly with regard to public access of financial records under the predecessor statute:
[T]he public interest asserted herein is the people's right to governmental transparency in the form of their right to know the identities of individuals receiving, or standing to receive, Commonwealth funds and the specific basis therefore. Such requests for information go to the heart of the RTKA and are precisely what the General Assembly intended when codifying the people's right to know.
Pennsylvania State Univ. v. State Employees' Ret. Bd., 594 Pa. 244, 259-60, 935 A.2d 530, 539 (2007); see also 1 Pa.C.S. § 1921(c)(5) (in ascertaining intention of General Assembly, court may consider the former law, including any statutes upon the same subject). My construction of the personal identification information exemption is more consistent with the General Assembly's clear intent. My construction will allow citizens to follow the public money given to the employees of a third-party contractor for work on public projects.
There are several additional reasons supporting my conclusions. First and foremost, because the Law is remedial legislation, the exemptions from disclosure must be narrowly construed. Bowling v. Office of Open Records, 990 A.2d 813 (Pa.Cmwlth.2010) (en banc). My interpretation narrowly construes the personal identification information exemption by restricting it to information used for identification; therefore, my interpretation is consistent with direction given in our recent en banc decision.
Also, in ascertaining legislative intent, we must presume that the General Assembly intends to favor the public interest as against any private interest. 1 Pa.C.S. § 1922(5). My construction favors the public interest in following public money spent on public works, and it is therefore consistent with the statutory presumption.
Finally, I respectfully reject the majority's reasoning regarding the so-called "carve out" exception to the exemption found in Section 708(b)(6)(ii). The language, quoted above, essentially states that nothing shall preclude release of name and wage information of a public official or agency employee. This language means what it says and nothing more: name and wage information of a public official or agency employee may not be redacted.
*927 This language does not mean, as the majority asserts, that name and wage information of other individuals is exempt personal identification information. The plain language does not state that it is an exception to the exemption and does not declare any information exempt. Also, it does not mention other individuals at all. Reading it as an exception to the exemption for persons not mentioned is too convoluted. Surely, the General Assembly would have been more straightforward if it intended to shield wage information of non-agency employees who receive money for work on public projects.
For all these reasons, I would affirm the order of the Office of Open Records.
Judge PELLEGRINI Joins.
NOTES
[1] On September 4, 2009, the Court ordered the consolidation of the cases upon the application for relief filed by the Office of the Budget (Budget).
[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-.3104. Open Records operates under the RTKL. One of Open Record's duties under the RTKL is to assign appeals officers to review, when challenged, decisions by Commonwealth agencies in response to RTKL requests and issue orders and opinions on those challenges. See Section 1310 of the RTKL, 65 P.S. § 67.1310. Section 1301(a) of the RTKL authorizes an agency of the Commonwealth to file a petition for review with this Court from a final determination by an Open Records appeals officer. Id. § 67.1301(a).
[3] The third-party contractors apparently submitted the certified payrolls to the Agencies to prove their compliance with the Pennsylvania Prevailing Wage Act, Act of August 15, 1961, P.L. 987, as amended, 43 P.S. §§ 165-1 to -17(PWA). We find nothing, however, in the PWA that requires private contractors to submit to the Agencies the level of detail contained in the certified payroll records in this case. See Sapp Roofing Co. v. Sheet Metal Workers' Int'l Ass'n, 552 Pa. 105, 713 A.2d 627 (1998) (Zappala, J., concurring).
[4] Gribbin made his request in writing addressed to Scott Schaffer, Project Engineer of Western Engineering. It is apparent from the record, however, that this written request made its way to DCNR.
[5] It appears from the record that Gribbin did not challenge DCNR's decision to redact the employees' Social Security numbers from the certified payroll records; rather, his challenge was to the decision to redact home addresses.
[6] 65 P.S. § 67.708(b)(1)(ii).
[7] 65 P.S. § 67.708(b)(6)(i)(A).
[8] We find this decision by the Open Records appeals officer peculiar in light of her decision to deny DCNR's request for an evidentiary hearing to present evidence of harm.
[9] As set forth in Budget's memorandum of law submitted to Open Records, under the PWA, which relates to wages required to be paid to workers on construction projects for the Commonwealth and its political subdivisions, employers must pay the wage determined by the Secretary of Labor to be appropriate for a given class of worker.
[10] Neither DCNR nor Budget appears to have submitted similar documents in their filing with Open Records.
[11] 5 U.S.C. § 552.
[12] "Record" is defined as follows:

Information, regardless of physical form or characteristics, that documents a transaction or activity of any agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.
Section 102 of the RTKL, 65 P.S. § 67.102.
[13] Accordingly, we will not address whether the records fall within the other exemptions claimed by the Agencies.
[14] Notwithstanding dictionary support, we are confident that our decision to construe "personal financial information" to include wage and wage-related information for individuals, such as that included in the certified payroll records, is consistent with the common usage and understanding of the phrase. Indeed, we are hard-pressed to fathom a piece of financial information that is more personal to the citizens of this Commonwealthparticularly those in the private sectorthan how much they earn on a gross basis, how much is deducted from their paychecks for taxes and other withholdings, and their take-home pay.
[15] Contrast the exemption in clause (A) of Section 708(b)(i)(6) of the RTKL with the exemptions in clauses (B) and (C). In the latter two, the phrase "a record containing" does not precede the exempt information. Thus, unlike the exemption in clause (A), which exempts the entire record if it contains the exempt information, the exemptions in clauses (B) and (C) exempt only the information in what may otherwise be a "public record" that must be disclosed, albeit in redacted form. See 65 P.S. § 67.706 (Redaction).
[16] Had we concluded that the certified payroll records were records that were exempt from access, the agencies, nevertheless, would have had the discretion to release the records with redaction. Section 506(c) of the RTKL, 65 P.S. § 67.506(c), provides agencies with the discretionary power "to make any otherwise exempt record accessible for inspection and copying." The RTKL prohibits such discretionary disclosure only if disclosure is prohibited by state or federal law or regulation, judicial order or decree, or the record is protected by a privilege. When no such prohibition exists, the "agency head" may provide for disclosure (and presumably partial disclosure) if he or she "determines that the public interest favoring access outweighs any individual, agency or public interest that may favor restriction of access." An agency, therefore, in its discretion may release certain records or parts of records where none of the above-noted prohibitions bar release and where the head of the agency concludes that the public interest outweighs a public interest in access restriction.
[17] Act of June 21, 1957, P.L. 390, as amended, formerly 65 P.S. §§ 66.1-.9 (repealed 2008).
[18] In preserving the account/voucher/contract language in the new law, the General Assembly is presumed to concur in the judicial interpretations placed on that language. See Buehl v. Horn, 728 A.2d 973, 980 (Pa.Cmwlth. 1999).
[19] Chief Justice Flaherty joined Justice Castille in the lead opinion, with Justice Zappala filing a separate concurring opinion only to point out that nothing in the PWA required the contractor to submit to the school district the payroll records in question. Accordingly, three out of the five justices who considered the case expressly concluded that the payroll records in Sapp Roofing were public records. Justice Nigro concurred only in the result and did not write a separate opinion. But seeing as he concurred in the resulti.e., that the unions should have access to the payroll records (in redacted form) under the Old Law, we must presume that he also concluded that the documents were public records. Thus, although Sapp Roofing is often described as a plurality decision, a strong majority of the justices in that case concluded that the payroll records were "public records" under the Old Law and thus affirmed the unpublished, unanimous panel opinion from this Court. Only Justice Cappy dissented, noting that he believed that the records were not "public records" under the Old Law. No other justices participated in the decision in Sapp Roofing.
[20] Unlike Sapp Roofing, in this case the contractors affected by the agencies' disclosure of the certified payroll records are not before the Court to argue their interests or that of their employees in ensuring that the personal financial information of these nongovernmental employees be exempt from RTKL requests. Moreover, none of the parties before the Court in these consolidated appeals have pressed us to conclude, contrary to Sapp Roofing, that the certified payroll records are not "financial records" under the RTKL. Accordingly, while the opportunity may come for the Supreme Court to revisit its broad interpretation of the account/voucher/contract language, these consolidated appeals do not appear to present that opportunity.
[21] Though we do not address in this opinion specifically the Agencies' claim that the exemptions in Sections 708(b)(1) and (b)(17) of the RTKL also support their decision to redact the certified payrolls, we would find that those exemptions also do not apply by virtue of Section 708(c) of the RTKL for the reason set forth above.
[22] Our holding in this case is limited to the public records at issue in these consolidated appealsi.e., certified payroll records of private employers doing business with Commonwealth agenciesand the propriety of the Agencies' redactions to protect the personal financial information of private citizens. Our holding should not be construed as a recognition (or rejection) of an exemption under the RTKL for names and/or addresses generally when such information is in the possession of a Commonwealth or local agency.
[23] Although we agree with Open Records' comment that an agency seeking to deny access to a record has the burden to prove by a preponderance of the evidence that the record is exempt, Section 708(a)(1) of the RTKL (65 P.S. § 67.708(a)(1)), the question presented and resolved above is one of law. The Agencies, by providing copies of the redacted certified payroll records or by describing the contents and the redactions, provided the only evidence that was necessary for the Court to address the overarching legal issues in this casenamely, whether the documents were accessible under the RTKL and, if so, whether the Agencies erred in producing only redacted copies.
[1] I point out that Sapp Roofing is captioned as an "Opinion Announcing Judgment of the Court," which signifies that it is not binding precedent. Cimaszewski v. Pennsylvania Board of Probation and Parole, 582 Pa. 27, 868 A.2d 416 (2005).
[2] When Sapp Roofing was decided, the 1957 Law consisted of only four sections, 65 P.S. §§ 66.1-66.4. The 1957 Law was subsequently expanded to fourteen sections by the Act of June 29, 2002, P.L. 663.
[3] The Majority relies on North Hills News Record v. McCandless, 555 Pa. 51, 722 A.2d 1037 (1999), and LaValle v. Office of General Counsel, 564 Pa. 482, 769 A.2d 449 (2001), for the proposition that Sapp Roofing has acquired "precedential force." However, while those cases do discuss and apply Sapp Roofing, the Supreme Court did not explicitly state in North Hills or LaValle that it was adopting the plurality holding in Sapp Roofing. Compare Commonwealth v. Blouse, 531 Pa. 167, 611 A.2d 1177 (1992) (Supreme Court expressly stated that it was adopting its plurality decision in Commonwealth v. Tarbert, 517 Pa. 277, 535 A.2d 1035 (1987)). Moreover, both of those decisions involve the four section 1957 Law, not the new RTKL.
[4] The Majority notes that the agencies raised the constitutional implications of publishing personal financial information but determined not to address them. Article 1, section 1 of the Pennsylvania Constitution guarantees a right to privacy in the nature of freedom from disclosure of personal matters. Denoncourt v. State Ethics Commission, 504 Pa. 191, 470 A.2d 945 (1983). This Court has recognized constitutional privacy interests in right to know cases and balanced those privacy interests against disclosure of information. See, e.g. Hartman v. Department of Conservation and Natural Resources, 892 A.2d 897 (Pa.Cmwlth.2006) (holding that the privacy interests of snowmobile owners in their names and addresses outweighed the public benefit of disclosure); Times Publishing Company Inc. v. Michel, 159 Pa.Cmwlth. 398, 633 A.2d 1233 (1993) (holding that the public disclosure of addresses, telephone numbers, and social security numbers would constitute an unwarranted invasion of personal privacy). In contrast to the Majority view, the analysis in this concurring opinion would bring the RTKL into harmony with the constitutional right to privacy, and thereby protect the employees in this case from an improper disclosure of their personal financial information.