# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Landlord Service Bureau, Inc.; : 
Michelle Williams; Collyer Realty : 
Company, d/b/a Galasso Real Estate : 
Services; Santo Policichio; Crown : 
Real Estate and Management : 
Services : 
                : 
             v. :    No. 1026 C.D. 2021
                :    Argued: February 7, 2023
The City of Pittsburgh and Council : 
of the City of Pittsburgh : 
                : 
Realtors Association of : 
Metropolitan Pittsburgh, a : 
Pennsylvania Corporation Not for : 
Profit : 
                : 
             v. : 
                : 
The City of Pittsburgh : 
                : 
Apartment Association of : 
Metropolitan Pittsburgh, a : 
Pennsylvania Corporation : 
Not for Profit : 
                : 
             v. : 
                : 
The City of Pittsburgh, a Home : 
Rule City : 
                : 
Appeal of: Landlord Service : 
Bureau, Inc.; Michelle Williams; : 
Collyer Realty Co., d/b/a Galasso : 
Real Estate Services; Santo : 
Policichio; and Crown Real Estate : 
and Management Services; and : 
Apartment Association of : 
Metropolitan Pittsburgh :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                   FILED:  March 17, 2023

The appellants are Landlord Service Bureau, Inc., Michelle Williams, Collyer Realty Company d/b/a Galasso Real Estate Services, Santo Policichio, and Crown Real Estate and Management Services (collectively, Landlord Service Bureau), and Apartment Association of Metropolitan Pittsburgh (Apartment Association) (collectively, Challengers).[1]  Challengers appeal an order of the Court of Common Pleas of Allegheny County (trial court), which granted partial judgment on the pleadings to the City of Pittsburgh and the Council of the City of Pittsburgh (City Council) (collectively, City).[2]  Specifically, the trial court held that the City had authority to enact an ordinance to require property owners to obtain a permit before renting their properties for residential use and to take certain affirmative actions to qualify for a permit.  On appeal, Landlord Service Bureau argues that the trial court erred because the ordinance imposes affirmative duties, responsibilities, and requirements upon the conduct of its business, which regulation is expressly prohibited under the Home Rule Law.[3]  For the reasons to follow, we reverse.

---

[1] Although the caption lists Realtors Association of Metropolitan Pittsburgh (Realtors Association), the joint notice of appeal indicates that only Landlord Service Bureau and Apartment Association appealed the trial court's order.  However, on October 6, 2021, this Court ordered that Realtors Association was precluded from participating in oral argument because it failed to file a brief on the merits.  Landlord Service Bureau and Apartment Association have filed a joint brief.

[2] Thereafter, a hearing was conducted on the remaining issue, *i.e.*, the lawfulness of the fees imposed in the challenged ordinance.  The final order of the trial court held that the fees are unlawful.  Trial Court Op., 7/20/2021, at 5-6.

[3] Home Rule Charter and Optional Plans Law, 53 Pa. C.S. §§2901-3171 (Home Rule Law).

## Background

In 2015, City Council enacted an ordinance known as the Residential Housing Rental Permit Program (Rental Ordinance or Ordinance).[4] The stated purpose of the Ordinance is to "ensure rental units meet all applicable building, existing structures, fire, health, safety, and zoning codes, and to provide an efficient system for compelling both absentee and local landlords to correct violations and maintain, in proper condition, rental property within the City [of Pittsburgh]." PITTSBURGH CODE §781.00. To that end, the Ordinance requires "*the registration of residential rental units* within the City . . . so that an inventory of rental properties and a verification of compliance can be made by City officials." *Id.* (emphasis added).

Under the Rental Ordinance, no rental unit can be leased, rented, or occupied without the owner first obtaining a permit from the City and designating a "responsible local agent."[5] PITTSBURGH CODE §781.02. A "rental unit" is defined as "any dwelling unit or residential structure containing sleeping units, which is leased or rented from the owner or other person in control of such units, to any tenant for a term exceeding fifteen (15) consecutive days within a thirty[(30)]-day period." PITTSBURGH CODE §781.01(k). The Ordinance exempts hotels, motels, bed and

---

[4] City of Pittsburgh, Pa., Code of Ordinances (PITTSBURGH CODE), Title VII, art. X: Rental of Residential Housing (2015). The Rental Ordinance repealed Chapter 781 in its entirety and enacted a new Chapter 781, known as the Residential Housing Rental Permit Program.

[5] A "responsible local agent" is "a natural person having his or her place of residence in Allegheny County and/or a professional, licensed real estate management firm with an office located in Allegheny County, or an entity which is excluded from licensure by the [] Real Estate Licens[ing] [and Registration] Act, [Act of February 19, 1980, P.L. 15, *as amended*, 63 P.S. §§455.101-455.902,] within an office in Allegheny County which has been granted legal authority by the property owner in accordance with the laws of the Commonwealth as the agent responsible for operating such property in compliance with the ordinances adopted by the City." PITTSBURGH CODE §781.01(*l*).

breakfast establishments, public housing units, dormitories, certified rehabilitation facilities, long-term medical care facilities, and owner-occupied rental units from its terms. *Id.*

To qualify for a rental permit, the owner must provide the following information:

(1) The street address and block and lot number of the rental unit(s);

(2) The number and types of rental units within the rental property;

(3) Name, residence address, telephone number, and where applicable an E-mail address, mobile telephone number, and facsimile number of all property owners of the rental unit(s);

(4) Name, residence address, telephone number, and where applicable an E-mail address, mobile telephone number, and facsimile number of the responsible local agent designated by the owner, if applicable;

(5) The name, residence address, telephone number and where applicable an E-mail address, mobile telephone number, and facsimile number of the person authorized to collect rent from the tenants;

(6) The name, residence address, telephone number and where applicable an E-mail address, mobile telephone number, and facsimile number of the person authorized to make or order repairs or services of the property, if in violation of City or State codes, if the person is other than the owner or the responsible local agent;

(7) The name, address and telephone number of any lien-holder(s) on the rental unit or the real property on which the rental unit is located at time of annual registration.

(8) A copy of a current valid occupancy permit[6] for the property shall be provided at the initial application.

---

[6] Rental unit owners pay separate application and permit fees to obtain an occupancy permit.

PITTSBURGH CODE §781.03(a). This information goes into a publicly available database. The annual fee for a rental permit is: $65 per unit for properties that house 10 or fewer units; $55 per unit for properties that house between 11 and 100 units; and $45 per unit for properties that house more than 100 units, plus applicable charges. PITTSBURGH CODE §781.05(b)(i). Rental property owners domiciled outside of Allegheny County must hire a licensed real estate management firm in Allegheny County to:

> (1)  Operat[e] the registered rental unit in compliance with all applicable City ordinances; and
>
> (2)  Provid[e] access to the rental unit in compliance with all applicable City ordinances; and
>
> (3)  [Be] designated . . . for acceptance of all legal notices or services of process with respect to the rental units.

PITTSBURGH CODE §781.03(e).

The Rental Ordinance authorizes the City's Department of Permits, Licenses, and Inspections (Department) to inspect each registered rental unit at least once every three years. PITTSBURGH CODE §781.04. The Ordinance requires the Department to promulgate regulations and to create "a manual of good landlord practice," "a performance-based regulatory system," a "landlord academy," "incentives to encourage 'good landlords,'" and "other best practices in the field of rental licensing." PITTSBURGH CODE §781.06(a)-(b). It also requires the Department to "create an online database" for the public to access information related to rental properties and their inspections. PITTSBURGH CODE §781.06(c). Violations of the Ordinance are summary offenses, and the failure to register each rental unit can be sanctioned by a fine of $500 per unit per month. PITTSBURGH CODE §781.09.

4

Following enactment of the Rental Ordinance, Landlord Service Bureau[7] filed suit against the City seeking (1) a declaration that the Rental Ordinance was *ultra vires*, void, and unconstitutional and (2) a permanent injunction against its enforcement.[8] Noting that a rental permit requires the owner to present a copy of its occupancy permit, Landlord Service Bureau asserts that "owners of single-family dwellings constructed prior to 1958, **have never been required** to obtain occupancy permits . . . unless after 1958 the exterior dimensions of the single[-]family dwelling had been altered resulting in an expanded footprint." Landlord Service Bureau Complaint ¶21; Reproduced Record 17a-18a (R.R. __) (emphasis in original). Landlord Service Bureau contends that requiring an occupancy permit and the other affirmative requirements in the Rental Ordinance constitute a regulation of its business, which a home rule municipality lacks power to do under the Home Rule Law.

Landlord Service Bureau's seven-count complaint also challenged the Rental Ordinance as violative of the United States and Pennsylvania Constitutions. Specifically, the registration requirements impair the existing contracts (leases) of City landlords in violation of article I, section 17 of the Pennsylvania Constitution, PA. CONST. art. I, §17. The required appointment of an Allegheny County agent treats similarly situated property owners differently in violation of the equal protection provisions of the Pennsylvania Constitution. *See* PA. CONST. art. I, §§1, 26. The requirement that city inspectors may enter leased rental units without permission of the owner or its lessee violates the Fourth Amendment to the United

---

[7] Landlord Service Bureau is made up of property owners and property managers engaged in the business of renting properties in the City. Landlord Service Bureau Complaint ¶5; Reproduced Record at 14a (R.R. __).

[8] The docket number for this action was GD-15-023074. R.R. 1a-7a.

5

States Constitution, U.S. CONST. amend. IV, and article I, section 8 of the Pennsylvania Constitution, PA. CONST. art. I, §8. The Rental Ordinance deprives rental owners of the right to enjoy their property in violation of substantive and procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV, and article I, section 9 of the Pennsylvania Constitution, PA. CONST. art. I, §9. Finally, the permit fees are not reasonably related to the City's costs to implement the Ordinance and, thus, impose an illegal revenue-generating tax on rental unit owners.

Thereafter, the trial court entered an order to address the legal issues, and it stated as follows:

> 4.     The matter shall be bifurcated; more specifically the *Plaintiffs shall file Motions for Judgment on the Pleadings on the following legal issues* not requiring discovery *and where a decision in favor of the Plaintiffs and against the Defendants would effectively terminate the litigation*: (1) Is Ordinance ultra vires in violation of the Home Rule Charter and Option Plans Law; (2) Is Ordinance in violation of the Pennsylvania Constitution; and (3) Is Ordinance in violation of Real Estate Licensing and Registration Act.

Trial Court Order, 2/29/2016, at 1; R.R. 182a (emphasis added). The "Plaintiffs" referred to Landlord Service Bureau, Realtors Association,[9] and Apartment Association,[10] which also filed actions to challenge the Rental Ordinance.[11] The trial

---

[9] The members of Realtors Association are Pennsylvania licensed real estate agents and property management firms, many of whom serve as agents for rental property within the City. Realtors Association Complaint ¶2; R.R. 55a. Additionally, some members of Realtors Association own property within the City. *Id.*

[10] Apartment Association has over 200 members, some of whom own more than 30,000 rental units within Allegheny County, including the City. Apartment Association Complaint ¶2; R.R. 88a.

[11] The docket number to Realtors Association's action was GD-16-003277. The docket number assigned to Apartment Association's action was GD-16-007082. They raised nearly identical

6

court consolidated all three actions for discovery and motions for judgment on the pleadings and identified Landlord Service Bureau's complaint as the lead docket number. R.R. 109a-10a. The parties to all three actions filed cross-motions for judgment on the pleadings at the lead docket number.

On July 25, 2017, the trial court denied the Plaintiffs' motions for judgment on the pleadings and granted the City's motion for partial judgment on the pleadings. The trial court held that the Rental Ordinance was a valid exercise of police powers, enacted to protect the health and safety of rental housing residents. "Without an identified person of record, there is nobody to notify of violations." Trial Court Op., 7/25/2017, at 3. The trial court held that the Ordinance "will positively impact neighborhoods by ensuring rental properties are safe;" further, if there is a violation, a registered contact person will assist the City's enforcement response. *Id*. at 3-4.

On the equal protection claim, the trial court concluded that the Ordinance's exemption of hotels, dormitories, hospitals, and public housing, as well as the requirement that a rental owner appoint an Allegheny County agent, easily survived a rational relationship analysis. City Council determined that non-compliance with applicable building and public health codes in rental homes or apartments was not a problem apparent in hotels, motels, dormitories or other owner-occupied facilities, which satisfied substantive due process. Finally, the trial court

---

issues. Similar to Landlord Service Bureau's claims, they challenged the Ordinance as violating the Home Rule Law and Pennsylvania Constitution, including an equal protection challenge to the Ordinance classifications, which exempted owner-occupants, dormitories, and site-based Section 8 housing, 42 U.S.C. §§1404a-1406, 1434-1440, from the Rental Ordinance, including those property owners who do not reside or have an office in Allegheny County. They also claimed that the Rental Ordinance contravened the Pennsylvania Rules of Civil Procedure by providing a different procedure for service of original process on rental unit owners and impermissibly regulated the business and scope of licensed real estate agents and brokers.

held that the Ordinance did not violate the Real Estate Licensing and Registration Act, 63 P.S. §§455.101-455.902, because it does not relate to the sale or transfer of real property.[12]

## Appeal

Challengers filed a single notice of appeal of the trial court's order entered in the lead docket number. The caption of the notice of appeal contained multiple docket numbers to cover all the actions filed by Landlord Service Bureau, Realtors Association, and Apartment Association.

On October 21, 2021, this Court entered a Rule to Show Cause why the appeal should not be quashed in light of *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018) (requiring the filing of separate notices of appeal when a single order resolves more than one action listed on the trial court docket). On November 15, 2021, the Court ordered the parties to brief that question in their briefs on the merits of the appeal.

On appeal,[13] Challengers raise multiple issues, which we summarize as follows. First, they argue that the appeal should not be quashed because the filing of a single notice of appeal at the lead docket number for several consolidated civil cases did not violate *Walker* or PA. R.A.P. 341(a). Second, they argue that the trial court erred in concluding that the Rental Ordinance was not an impermissible regulation of business forbidden by Section 2962(f) of the Home Rule Law, 53 Pa.

---

[12] The City filed post-trial motions, which were denied by the trial court. Trial Court Order, 8/16/2021.

[13] Our review determines whether the trial court committed an error of law or abused its discretion. *Hartman v. City of Allentown*, 880 A.2d 737, 741 (Pa. Cmwlth. 2005).

C.S. §2962(f). Third, they argue that the trial court erred in rejecting their various constitutional challenges to the Rental Ordinance.[14]

## Quashal of Appeal

We first address whether the appeal should be quashed.

Pennsylvania Rule of Appellate Procedure 341(a) provides that, "[e]xcept as prescribed in paragraphs (d) and (e) of this rule, an appeal may be taken as of right from any final order of a government unit or trial court." PA. R.A.P. 341(a). The Official Note to Rule 341 provides, in pertinent part:

> A party needs to file only a single notice of appeal to secure review of prior non-final orders that are made final by the entry of a final order, *see K.H. v. J.R.*, 826 A.2d 863, 870-71 (Pa. 2003) (following trial); *Betz v. Pneumo Abex LLC*, 44 A.3d 27, 54 (Pa. 2012) (summary judgment). *Where, however, one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed. Malanchuk v. Tsimura*, 137 A.3d 1283, 1288 (Pa. 2016) ("[C]omplete consolidation (or merger or fusion of actions) does not occur absent a complete identity of parties and claims; separate actions lacking such overlap retain their separate identities and require distinct judgments[.]"); *Commonwealth v. C.M.K.*, 932 A.2d 111, 113 & n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two persons' judgments of sentence).

---

[14] Challengers assert that the requirement for out-of-county rental unit owners to accept service of original process by certified mail contravenes the Pennsylvania Rules of Civil Procedure, in violation of procedural due process. They also assert the Ordinance subjects rental property owners to warrantless, baseless searches in violation of the constitutional protection against unreasonable searches and seizures; requires the public disclosure of private information in violation of their state constitutional right to privacy; and modifies existing contracts between landlords and tenants, which unconstitutionally impairs existing contracts.

PA. R.A.P. 341, Official Note (emphasis added). In *Walker*, 185 A.3d at 976-77,[15] our Supreme Court interpreted Rule 341(a) as setting forth "a bright-line mandatory instruction to practitioners to file separate notices of appeal" for each docket. The failure to do so results in quashal of the appeal.

In *Always Busy Consulting, LLC v. Babford & Company, Inc.*, 247 A.3d 1033 (Pa. 2021), our Supreme Court reaffirmed the general rule in *Walker* that separate notices of appeal must be filed, and it confirmed that parties cannot, on their own initiative, consolidate matters for appellate review by filing a single notice of appeal from an order arising from multiple dockets. *Always Busy Consulting*, 247 A.3d at 1042. It explained that "consolidation is a determination that must be made by the appellate court, at its discretion, absent a stipulation by all parties to the several appeals." *Id.* (quoting *Walker*, 185 A.3d at 976); *see also* PA. R.A.P. 513.[16]

On the other hand, a single appeal may suffice in some circumstances. Such a circumstance includes where

> consolidation of the dockets was sought and granted in the common pleas court, and *there existed complete identity of parties and claims, such that a single order disposed of the litigation* which involved two sides of the same coin, *i.e.*,

---

[15] In *Walker*, the Commonwealth filed a single notice of appeal from a single order which disposed of four separate motions to suppress evidence filed by four separate criminal defendants at four separate docket numbers. The matters had not been consolidated in either the trial court or Superior Court, and the parties did not request consolidation.

[16] It states:

> Where there is more than one appeal from the same order, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal. Appeals may be consolidated by stipulation of the parties to the several appeals.

PA. R.A.P. 513.

> competing petitions to vacate and confirm the same arbitration award.

*Always Busy Consulting*, 247 A.3d at 1043 (emphasis added). Noting that a strict application of *Walker* would elevate form over substance, the Supreme Court held that "filing a *single notice of appeal from a single order entered at the lead docket number* for consolidated civil matters where all record information necessary to adjudication of the appeal exists, and which involves identical parties, claims and issues, does not run afoul of *Walker*, Rule 341, or its Official Note." *Always Busy Consulting*, 247 A.3d at 1043 (emphasis added).

In *Commonwealth v. Young*, 265 A.3d 462 (Pa. 2021), our Supreme Court again affirmed that separate appeals must be filed where an order concerns more than one docket. However, it also observed that *Walker* and *Always Busy Consulting* did not consider the interplay between Pennsylvania Rules of Appellate Procedure 341(a) and 902,[17] which "permits the appellate court, in its discretion, to allow correction of the error, where appropriate." *Young*, 265 A.3d at 477.

In *Young*, two defendants were prosecuted for hazing rituals at The Pennsylvania State University under separate docket numbers. The common pleas court consolidated the docket numbers for each defendant for trial, and the defendants filed an omnibus pre-trial motion listing all three docket numbers. The court granted the motion, in part, issuing an opinion and order reflecting a double caption at the top, one for each defendant, listing all three docket numbers. The

---

[17] PA. R.A.P. 902. It states, in pertinent part:

> Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken.

*Id*.

11

Commonwealth filed two notices of appeal, one for each defendant. Each notice contained the three docket numbers pertaining to that defendant.

In response to the Superior Court's show cause order, the Commonwealth argued that it should be permitted to amend its formatting error in its notices of appeal. However, the Superior Court quashed the appeals under authority of *Walker*.

Our Supreme Court reversed. It agreed that the exception in *Always Busy Consulting* was not so broad as to encompass the order at issue on appeal because the docket numbers were not the same "sides of the same coin," *i.e.*, different ways of litigating the exact same dispute, and there was no lead docket number. *Young*, 265 A.3d at 475. Nevertheless, the Supreme Court found merit in the Commonwealth's contention that quashing its appeal would "elevate form over substance." *Id*. It noted "another rule with a role to play in matters like this one: PA. R.A.P. 902 (manner of taking appeal)." *Young*, 265 A.3d at 475. Pennsylvania Rule of Appellate Procedure 902 permits an appellate court, in its discretion, to allow correction of a docket error, where appropriate. *Young*, 265 A.3d at 477. Rule 902 "encourages, though it does not require, appellate courts to remand the matter to the lower court so that the procedural defect may be remedied." *Young*, 265 A.3d at 477 (quoting *Commonwealth v. Williams*, 106 A.3d 583, 587-88 (Pa. 2014)). Under Rule 902, a procedurally defective, albeit timely, notice of appeal can be corrected to allow the appellate court to reach the merits. *Young*, 265 A.3d at 477. The Supreme Court remanded the matter to the Superior Court to reconsider the Commonwealth's request to correct its error.

Here, Challengers filed a single, joint notice of appeal at the lead trial docket number (GD-15-023074). On the notice was a triple caption, one for each

12

plaintiff, and the three trial docket numbers, noting their consolidation at the lead trial docket number (GD-15-023074). Copies of the notice of appeal, however, were not also filed under the other two trial docket numbers (GD-16-003277 and GD-16-00782). *See* R.R. 8a-11a.

Challengers argue that a single notice of appeal was appropriate, citing *Always Busy Consulting*. Although they did not seek leave of court to remedy a procedural defect after this Court issued a rule to show cause, they do so in their joint brief on the merits, should the Court find *Always Busy Consulting* inapplicable. Challengers Brief at 18. The City responds that this Court lacks discretion to remand for Challengers to correct defects in the filing of the notice of appeal. There was no breakdown in court operations, as in *Always Busy Consulting*, and there was not "true consolidation" of the docket numbers because the cases were not consolidated for trial. Further, the notice of the appeal was not filed on all trial dockets, as in *Young*.

We agree that the trial court's consolidation of the cases for judgment on the pleadings was not a complete consolidation. *See* PA. R.A.P. 341(b)(1), Official Note.[18] The cases did not involve identical parties and claims, particularly on the constitutional claims. Nevertheless, the docket numbers were consolidated by the trial court for purpose of motions for judgment on the pleadings, specifically identifying the issues to be decided. The trial court's single order disposed of the legal issues on which the trial court ordered consideration. The appeal from a single order entered at the lead docket number has all record information necessary to

---

[18] The Note cites *Malanchuk v. Tsimura*, 137 A.3d 1283, 1288 (Pa. 2016), for the proposition that "complete consolidation (or merger or fusion of actions) does not occur absent a complete identity of parties and claims; separate actions lacking such overlap retain their separate identities and require distinct judgments[.]" PA. R.A.P. 341, Official Note.

13

adjudicate the appeal. Given these circumstances, we agree with Challengers that the dockets "merged" for partial judgment on the pleadings and, thus, fit within the narrow exception of *Always Busy Consulting*.

Accordingly, the appeal will not be quashed.[19]

### A. Home Rule Law

The Pennsylvania Constitution guarantees the right of home rule. Article IX, section 2 of the Pennsylvania Constitution provides:

> Municipalities shall have the right and power to frame and adopt home rule charters. Adoption, amendment or repeal of a home rule charter shall be by referendum. The General Assembly shall provide the procedure by which a home rule charter may be framed and its adoption, amendment or repeal presented to the electors. If the General Assembly does not so provide, a home rule charter or a procedure for framing and presenting a home rule charter may be presented to the electors by initiative or by the governing body of the municipality. A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.

PA. CONST. art. IX, §2. Any power not withheld by the General Assembly is extended to a municipality that has adopted home rule. *See City of Philadelphia v. Schweiker*, 858 A.2d 75, 84 (Pa. 2004) (holding that home rule municipality "may legislate concerning municipal governance without express statutory warrant for each new ordinance"). However, the Home Rule Law extends home rule authority over matters "not denied by the Constitution of Pennsylvania, by statute or by [the] home rule charter." 53 Pa. C.S. §2961; *see City of Pittsburgh v. Fraternal Order of*

---

[19] The City also argued in its brief that Challengers waived all issues on appeal because they failed to file post-trial motions. Post-trial motions are filed following trial by jury or trial by a judge without a jury present. PA.R.CIV.P. 227.1, Official Note. However, a motion for post-trial relief may not be filed to orders disposing of motions for judgment on the pleadings. *Id*.

*Police, Fort Pitt Lodge No. 1*, 161 A.3d 160, 170 (Pa. 2017) (quoting *Spahn v. Zoning Board of Adjustment*, 977 A.2d 1132, 1143-44 (Pa. 2009)) (legislature "may limit the functions to be performed by home rule municipalities"). In other words, "the home rule charter shall not give any power or authority to the municipality contrary to or in limitation or enlargement of powers granted by statutes which are applicable to a class or classes of municipalities[.]" 53 Pa. C.S. §2962(a).

Grants of municipal power "shall be liberally construed in favor of the municipality." 53 Pa. C.S. §2961. Thus, "[i]n analyzing a home rule municipality's exercise of power, . . . we begin with the view that it is valid absent a limitation found in the Constitution, the acts of the General Assembly, or the charter itself, and we resolve ambiguities in favor of the municipality." *Nutter v. Dougherty*, 938 A.2d 401, 411 (Pa. 2007) (quoting *County of Delaware v. Township of Middletown*, 511 A.2d 811, 813 (Pa. 1986)).

Further, home rule "incorporates and reinforces local municipalities' traditional police powers." *Pennsylvania Restaurant and Lodging Association v. City of Pittsburgh*, 211 A.3d 810, 817 (Pa. 2019). That police power has been described as that which "promote[s] the health, safety and general welfare of the people." *Id*. (quoting *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 314 (Pa. 1995)). The police power authorizes "broad and varied municipal activity to protect the health, morals, peace and good order of the community." *Adams v. City of New Kensington*, 55 A.2d 392, 395 (Pa. 1947).

On the other hand, Section 2962(f) of the Home Rule Law prohibits a home rule municipality from regulating the conduct of a business enterprise unless expressly authorized by another statute. It states as follows:

> A municipality which adopts a home rule charter *shall not determine duties, responsibilities or requirements placed upon*

*businesses, occupations and employers*, including the duty to withhold, remit or report taxes or penalties levied or imposed upon them or upon persons in their employment, *except as expressly provided by statutes which are applicable in every part of this Commonwealth* or which are applicable to all municipalities or to a class or classes of municipalities. This subsection shall not be construed as a limitation in fixing rates of taxation on permissible subjects of taxation.

53 Pa. C.S. §2962(f) (emphasis added). This Court and our Supreme Court have addressed the application of Section 2962(f) to several ordinances.

In *Smaller Manufacturers Council v. Council of City of Pittsburgh*, 485 A.2d 73 (Pa. Cmwlth. 1984), this Court considered an ordinance that addressed the economic disruption caused by plant closings by requiring the employer to notify the City when a plant closed, or relocated, or reduced operations, affecting more than 15% of plant employees. We held that the ordinance was invalid under *former* Section 302(d) of the Home Rule Law[20] because it regulated the "duties, responsibilities or requirements" of the businesses. 53 Pa. C.S. §2962(f). We reasoned that "if the City wishes to act in this area[,] it must be empowered to do so by the General Assembly." *Smaller Manufacturers Council*, 485 A.2d at 77.

At issue in *Building Owners and Managers Association of Pittsburgh v. City of Pittsburgh*, 985 A.2d 711 (Pa. 2009), was an ordinance that imposed requirements on city contractors providing janitorial and security services to commercial buildings. The ordinance required a contractor awarded a new contract to retain the employees of the prior contractor for 180 days after commencement of

---

[20] Act of April 13, 1972, P.L. 184, *as amended*, added by the Act of April 13, 1972, P.L. 184, *formerly* 53 P.S. §1-302(d), repealed by the Act of December 19, 1996, P.L. 1158, No. 177. The language of *former* Section 302(d) was virtually identical to that found in Section 2962(f). *See Building Owners and Managers Association of Pittsburgh v. City of Pittsburgh*, 929 A.2d 267, 270 n.6 (Pa. Cmwlth. 2007), *aff'd*, 985 A.2d 711 (Pa. 2009).

the new contract.[21]  The Supreme Court held that the ordinance placed affirmative duties on employers in violation of Section 2962(f) of the Home Rule Law.  By prohibiting a contractor from releasing any employees of its predecessor for 180 days, the ordinance imposed a "'requirement' . . . upon the new contractor." *Building Owners and Managers Association of Pittsburgh*, 985 A.2d at 714.

In *Pennsylvania Restaurant and Lodging Association*, 211 A.3d 810, the Supreme Court considered two City ordinances.  The first required local businesses to provide paid sick leave to enhance public health, and the second ordinance required building owners to train employees on disaster preparedness to protect building occupants and property.

As to the first ordinance, our Supreme Court held that the City did not exceed its home rule authority in enacting the ordinance.  In reaching this decision, the Court relied on Section 16(c) of the Disease Prevention and Control Law of 1955,[22] which permits municipalities with departments of health to enact "health-related ordinances or regulations."  *Pennsylvania Restaurant and Lodging Association*, 211 A.3d at 827.  The City satisfied the threshold requirement of being a municipality with a department of health, and the challengers did not dispute that paid sick leave advanced the cause of disease prevention and control.  *Id.* at 828-29.  The Supreme Court concluded that the ordinance represented an exercise of the City's traditional police powers as well as its authority under the Disease Prevention

---

[21] The purpose of the ordinance was to protect certain non-supervisory workers who lost their jobs when their employer's service contract was awarded to a new contractor.  Under the ordinance, any contractor awarded a new service contract was required to retain most employees of the previous contractor for a 180-day transition period.  The ordinance applied to contractors with five or more employees providing janitorial, security, or building maintenance services to large commercial buildings within the City.  Any contractor violating the ordinance would be subject to fines, and the displaced employee was given a private right of action to enforce the ordinance.

[22] Act of April 23, 1956, P.L. (1955) 1510, *as amended*, 35 P.S. §521.16(c).

17

and Control Law of 1955. The ordinance burdened local businesses, but it was a burden authorized by the Disease Prevention and Control Law of 1955. As such, it satisfied the exception in Section 2962(f) of the Home Rule Law.

On the second City ordinance, the Supreme Court reached a different conclusion. This ordinance imposed "numerous complex and continuing obligations upon owners and employees of 'covered properties,'" to ensure that the building managers were capable of protecting building occupants and property. *Pennsylvania Restaurant and Lodging Association*, 211 A.3d at 832. The Supreme Court rejected the City's arguments in defense of the ordinance, explaining as follows:

> Even if this case does not pronounce the ever-elusive bright-line rule, it enables us to bracket the gray area between what is and is not allowed by the limitations upon business regulation imposed by the Business Exclusion. *While [a paid sick days ordinance] certainly burdens [City] employers, it clearly falls within the ambit of the City's express statutory authority to legislate in furtherance of disease control and prevention.*
>
> Conversely, the City fails to identify any statutory authority sufficient to sustain [an ordinance imposing training requirements on certain building owners and employees]. *While the training that the [ordinance] mandates may well have a salutary public effect in disaster management, the measure's multifarious provisions simply want for any statutory authority, express or otherwise.* For owners and operators of qualifying facilities, maintaining and securing those facilities is a major, if not principal, function, and the definitions of "security officer" and "building service employee," are sufficiently broad to capture, at least as to some properties, virtually every individual employed by the building's management. For the foregoing reasons, *we must conclude that no statutory provision cited by the City comes close to authorizing such requirements.*

*Id.* at 837-38 (internal citations omitted). The Supreme Court held that the second City ordinance violated the limits in Section 2962(f) of the Home Rule Law.

In *Apartment Association of Metropolitan Pittsburgh, Inc. v. City of Pittsburgh*, 261 A.3d 1036 (Pa. 2021) (*Apartment Association II*), the Supreme Court considered a challenge to an ordinance that prohibited landlords from refusing to rent to persons receiving housing assistance. The ordinance supplemented an existing ordinance prohibiting other forms of discrimination in housing. The Supreme Court agreed with the association that the ordinance placed an affirmative duty on residential landlords by making them participate in an otherwise voluntary federal housing subsidy program, which, in turn, involved numerous and burdensome requirements. The City's general police powers and the Pennsylvania Human Relations Act[23] did not authorize enactment of an ordinance prohibiting discrimination on the basis of source of income.

Here, Challengers argue that the Rental Ordinance imposes "a farrago of affirmative duties on housing-provider businesses" without an underlying statewide statute to authorize such regulation. Challengers Brief at 22. The Ordinance requires rental property owners to obtain a permit and allow inspections of each rental unit, with or without permission of the tenant; to report personal and private data to the City for disclosure to the public; and to designate a responsible local agent for out-of-county owners. The local agent must be a property management company located in Allegheny County that will manage the rental unit; allow City officials to enter their properties to conduct an inspection; and accept legal process on behalf of the rental unit owner.

The City argues that the Rental Ordinance is authorized by its broad police power to protect the health and safety of rental housing residents. This Court has already held that rental registration and inspection ordinances are a valid exercise

---

[23] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§951-963.

19

of the police power. City Brief at 18 (citing *Berwick Area Landlord Association v. Borough of Berwick*, 48 A.3d 524 (Pa. Cmwlth. 2011); *Simpson v. City of New Castle*, 740 A.2d 287 (Pa. Cmwlth. 1999); *McSwain v. Commonwealth*, 520 A.2d 527 (Pa. Cmwlth. 1985)). The Rental Ordinance simply requires the permitting and registration of a rental unit, without directing the day-to-day operation of the rental business, to ensure compliance with building codes that already apply to rental owners. Thus, according to the City, the Ordinance does not implicate Section 2962(f) of the Home Rule Law.

First, the rental registration and inspection ordinances at issue in *Berwick*, *Simpson*, and *McSwain* were not as extensive in scope. They required a permit but limited the inspections to periods of vacancies or required a warrant. The Rental Ordinance goes beyond a permit and very occasional inspection. Second, two of the cited cases involved ordinances that were authorized under the applicable borough code. Third, even if the police power authorizes the Rental Ordinance, that power, in turn, is limited by Section 2962(f) of the Home Rule Law.

Section 2962(f) prevents "regulations that burden commercial interest absent express authorization[.]" *Pennsylvania Restaurant and Lodging Association*, 211 A.3d at 832. The Rental Ordinance imposes affirmative and numerous duties and requirements on businesses engaged in renting residential units, beyond just the registration and permitting of rental units. The Ordinance requires inspections of rental units and the employment of a licensed real estate management firm in Allegheny County. The Ordinance requires the creation of a landlord academy and a manual of good landlord practice. To the extent this will require participation of landlords, it is a training that was held to be unauthorized for building managers in *Pennsylvania Restaurant and Lodging Association*. The Ordinance directs the City

20

to create a database on rental units and their inspections and make this information available to the public, which will impact landlords by having their contact information and other personal, identifying information accessible to the public. PITTSBURGH CODE §781.06(c).

To adopt such affirmative requirements, the City needed "express authorization," *Pennsylvania Restaurant and Lodging Association*, 211 A.3d at 832, under a statute "applicable in every part of this Commonwealth or which [is] applicable to all municipalities or to a class or classes of municipalities." 53 Pa. C.S. §2962(f). The City asserts that this authority is found in Section 101 of its Home Rule Charter:

> The City of Pittsburgh has all home rule powers and *may perform any function and exercise any power not denied by* the Constitution, *the laws of Pennsylvania*, or this charter whether such powers or functions are presently available to the City or may in the future become available. The powers of the City shall be construed liberally in favor of the City, and the specific mention of particular powers in this charter shall not be construed as limiting in any way the general power stated in this article. All possible powers of the City, except as limited above, are to be considered as if expressly set forth in this article whether such powers are presently available to the City, or may in the future become available.

Home Rule Charter of the City of Pittsburgh (CITY CHARTER) §101 (emphasis added). One power denied to the City is the power to impose "duties, responsibilities or requirements" upon the conduct of "businesses, occupations and employers." 53 Pa. C.S. §2962(f).

The City argues that if it cannot enact its Rental Ordinance, it will have less power than a non-home rule counterpart, which would be contrary to law. This Court has explained that "a home[]rule municipality cannot, *except where specified*

21

*clearly by statute* or the municipality's own charter, find itself vested with less power than a non-home[]rule counterpart." *Apartment Association of Metropolitan Pittsburgh, Inc. v. City of Pittsburgh*, 228 A.3d 960, 972 (Pa. Cmwlth. 2020) *(Apartment Association I)* (quoting *Pennsylvania Restaurant and Lodging Association*, 211 A.3d at 824). Here, Section 2962(f) of the Home Rule Law provides this "clear specification." *Id*.

The City's reliance on *Berwick*, 48 A.3d 524, *Simpson,* 740 A.2d 287, and *McSwain*, 520 A.2d 527, is misplaced. Each case raised similar constitutional issues: equal protection, due process, and the Fourth Amendment. However, none raised the issue of Section 2962(f) of the Home Rule Law. In *Berwick*, 48 A.3d at 535, the ordinance required landlords to prevent violations of the noise ordinance by their tenants; it did not impose any "additional civil/criminal liability upon owners other than that which is imposed by existing law." In *Simpson*, an ordinance requiring an inspection before renewal of a two-year permit was held not to implicate the Fourth Amendment because a warrant was required. In *McSwain*,[24] an ordinance requiring a vacant dwelling to pass a housing code inspection before it could be rented again was authorized by the municipality's police powers. The ordinances were expressly authorized by the applicable borough or city code. Here, the Rental Ordinance imposes many more requirements upon rental unit owners,[25] such as the

---

[24] The City of Farrell is a home rule municipality, but that fact is not mentioned in *McSwain*. The challenge was to the constitutionality of a city inspection after a rental unit was vacated before it could be rented again.

[25] Rental unit owners must have an occupancy permit before they can apply for a rental permit. The rental permit application requires the property owner to provide the contact information for all property owners of the unit, the responsible local agent, the person authorized to collect rents, the person authorized to order repairs or services for the property, and any lienholders. This information on rental properties and inspections will be put into a public, online database. PITTSBURGH CODE §781.06(c).

appointment of an agent in Allegheny County and a search without the owner's or lessee's permission.[26]

Finally, the City argues that the Rental Ordinance is similar to the ordinance upheld by this Court in *Hartman v. City of Allentown*, 880 A.2d 737 (Pa. Cmwlth. 2005). In *Hartman*, a home rule municipality passed an ordinance that made sexual orientation and identity a prohibited basis of discrimination in employment, housing, and public accommodations. The anti-discrimination ordinance did not require businesses to do anything; rather, it was prohibitory in its effect. As such, we held that the ordinance did not violate Section 2962(f) of the Home Rule Law. We stated that "a narrow reading of Section 2962(f) of the Home Rule Law is consistent with the Legislature's intent . . . that the phrase 'regulation of business' means affirmative duties being placed on businesses." *Hartman*, 880 A.2d at 746.

*Hartman* addressed an anti-discrimination ordinance that was amended to include sexual orientation and gender identity within its scope. In contrast, the Rental Ordinance places affirmative and specific duties upon those in the business of renting real property, which is the type of regulation that Section 2962(f) prohibits.

The Rental Ordinance imposes numerous affirmative duties upon rental unit owners. In light of the express limitations in Section 2962(f) of the Home Rule

---

[26] The City adopted the 2015 edition of the International Property Maintenance Code. PITTSBURGH CODE §1004.01. It provides that if entry into a structure or upon a premises is refused, the code official shall have the remedies provided by law to secure entry. Section 104.3 of the 2015 International Property Maintenance Code, available at https://codes.iccsafe.org/content/IPMC2015/chapter-1-scope-and-administration#IPMC2015_Ch01_SubCh02 (last visited March 17, 2023). At argument, the City stated that a warrant would be obtained if an owner or lessee refused to allow the Department to inspect the rental unit. However, the Rental Ordinance does not require a warrant for inspection and does not refer to the 2015 International Property Maintenance Code's property inspection procedures.

Law, we conclude that the City was without authority to enact the Rental Ordinance.[27]

## Conclusion

As established in *Berwick*, *Simpson*, and *McSwain*, requiring the registration of rental units is not the problem with the Rental Ordinance. It is the inspection without permission of an owner and lessee, together with the obligation of rental unit owners to hire a responsible local agent, to follow best practices, to attend a landlord academy, and to have their registration and inspection information put on a public, online database that place affirmative "duties, responsibilities [and] requirements" on rental unit owners. The City has not identified "a statute applicable in every part of this Commonwealth" that "expressly" authorized this wide-ranging regulation of the residential landlord business. 53 Pa. C.S. §2962(f). Consequently, the City was without authority to enact the Rental Ordinance in its present configuration. Accordingly, the order of the trial court is reversed.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[27] Because we have concluded that the Rental Ordinance violates the Home Rule Law, we need not address Challengers' constitutional issues. *Department of Conservation and Natural Resources v. Office of Open Records*, 1 A.3d 929, 936 (Pa. Cmwlth. 2010) (a court should refrain from deciding constitutional issues when a dispute can be resolved on a statutory basis).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Landlord Service Bureau, Inc.;   :
Michelle Williams; Collyer Realty   :
Company, d/b/a Galasso Real Estate   :
Services; Santo Policichio; Crown   :
Real Estate and Management   :
Services   :
  :
         v.   :      No. 1026 C.D. 2021
  :
The City of Pittsburgh and Council   :
of the City of Pittsburgh   :
  :
Realtors Association of   :
Metropolitan Pittsburgh, a   :
Pennsylvania Corporation Not for   :
Profit   :
  :
         v.   :
  :
The City of Pittsburgh   :
  :
Apartment Association of   :
Metropolitan Pittsburgh, a   :
Pennsylvania Corporation   :
Not for Profit   :
  :
         v.   :
  :
The City of Pittsburgh, a Home   :
Rule City   :
  :
Appeal of: Landlord Service   :
Bureau, Inc.; Michelle Williams;   :
Collyer Realty Co., d/b/a Galasso   :
Real Estate Services; Santo   :
Policichio; and Crown Real Estate   :
and Management Services; and   :
Apartment Association of   :
Metropolitan Pittsburgh   :

## ORDER

AND NOW, this 17th day of March, 2023, the August 16, 2021, order of the Court of Common Pleas of Allegheny County is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita